1

2

3

4

5

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

8

9

AMBROSIO MARIN and MIGUEL
SANCHEZ, individually and on
behalf of all others similarly
situated,

NO. CV-06-3090-RHW

10

Plaintiffs,

**ORDER ADDRESSING
PENDING MOTIONS**

11

v.

12

WILLIAM EVANS, TIM EVANS,
and JUAN MARIN,

13

Defendants.

14

15      Before the Court are Plaintiffs' Motion to Certify Class (Ct. Rec. 74);

16  Defendant William Evans's Motion for Summary Judgment (Ct. Rec. 80);

17  Plaintiffs' Motion to Vacate Remainder of Scheduling Order (Ct. Rec. 112);

18  Plaintiffs' Motion for Protective Order (Ct. Rec. 116); Defendant's Motion to

19  Exclude All of Portions of Declarations (Ct. Rec. 130); and Defendant's Motion to

20  Compel Discovery Responses (Ct. Rec. 142).

21                          **BACKGROUND**

22      The two-named Plaintiffs are former employees of Evans Fruit Company

23  (EFC).  EFC operates over 7,000 acres of orchard property in Sunnyside, Mattawa,

24  Cowiche, West Valley (Yakima) and Moxee, all located in Eastern Washington.

25  EFC employs approximately 4,000 seasonal and year-round hourly and piece rate

26  workers in its fields and its warehouses.  Plaintiffs allege that EFC is a corporation

27  that affects interstate commerce and is a RICO enterprise, pursuant to 18 U.S.C. §

28  1961(4).

**ORDER ADDRESSING PENDING MOTIONS ~ 1**

Plaintiffs were employed as year-round tractor drivers at EFC's ranch in Sunnyside. Plaintiff Marin began at EFC in 1986 for a short period of time, was hired again in 1997, and then was hired for year-round employment in 2004 through 2005. Plaintiff Sanchez began as a seasonal employee in 1994 and was hired on a year-round basis in 1998 where he worked continuously until 2004.

Defendant Bill Evans, along with his wife, are officers and primary shareholders of EFC. Defendant Tim Evans is EFC's vice present and manager. Defendant Juan Marin has been the supervisor of the Sunnyside fruit orchards for several years.

Plaintiffs bring this action, asserting that the named Defendants, William Evans, Tim Evans, and Juan Marin, have conspired to violate the Racketeer Influenced and Corrupt Organization Act (RICO) by participating in the affairs of EFC, the enterprise, through a pattern of racketeering activity. The alleged pattern of racketeering activity is a violation of § 274 of the Immigration and Nationality Act, specifically, the employment of illegal aliens and the harboring of illegal aliens.

Plaintiffs allege that an Illegal Immigrant Hiring Scheme exists, which Plaintiffs describe as "Defendants have depressed their wages by knowingly employing vast numbers of illegal immigrants, more than 5,000 in the last four years alone, thereby depressing the market price for unskilled labor." Plaintiffs allege that the Scheme violates § 274 of the Immigration and NationaSlity Act.

Plaintiffs seek to obtain class certification for the following class:

> All persons legally authorized to be employed in the United States who have been employed by Evans Fruit Co. as either hourly wage or piece rate workers, from September 30, 2002 through the present.

Defendant William Evans has filed a Motion for Summary Judgment. Also before the Court are Plaintiffs' motions seeking to stay discovery and Defendant's motion to compel discovery.

**ORDER ADDRESSING PENDING MOTIONS ~ 2**

**PROCEDURAL HISTORY**

This case was filed on September 29, 2006. A scheduling conference was held on February 23, 2007, and a Scheduling Order was entered on March 5, 2007. On June 21, 2007, Plaintiffs filed a Motion to Vacate Class Action Certification, which the Court granted on July 3, 2007. On September 17, 2007, Plaintiffs filed a motion for leave to file an amended complaint in order to add Defendant Tim Evans. On October 12, 2007, the parties filed a Stipulation in which they agreed to modify the original Scheduling Order that was entered in this case. The parties contemplated that Plaintiffs would be filing a motion for class certification and agreed to certain deadlines for filing the motion, response, and reply. The parties also set the deadlines for filing their expert reports for April 24, 2008 and set the discovery deadline for July 11, 2008. On November 23, 2007, the Court granted Plaintiffs' motion to file an amended complaint and granted the parties' stipulations amending the Scheduling Order.

On December 7, 2007, Plaintiffs filed their Motion to Certify Class. This motion was noted for hearing on February 19, 2008. On December 21, 2007, Defendant William Evans filed a Motion for Partial Summary Judgment and noted the hearing for February 26, 2008. A hearing was held on Defendant William Evans's Motion for Summary Judgment in Yakima, Washington, on that day. Plaintiffs were represented telephonically by Howard Foster and Greg Lighty. Defendant William Evans was represented by Brendan Monahan.

At the hearing, there was discussion concerning the scope of the motion. In his motion, Defendant had argued that Plaintiffs could not present any evidence that Defendant Evans committed any of the alleged predicate offenses. In their response, Plaintiffs had argued that their claims against Defendant William Evans were based on his role in the conspiracy to violate the civil Racketeer Influenced and Corrupt Organization Act (RICO). In reply, Defendant argued that Plaintiffs could not produce any evidence that any of the co-Defendants or co-conspirators

**ORDER ADDRESSING PENDING MOTIONS ~ 3**

1  committed the predicate offenses.

2      At the hearing, Plaintiffs stated that they had admissible evidence that the

3  members of the conspiracy had the requisite knowledge required to commit the

4  predicate acts.  Based on this representation, the Court permitted Plaintiffs to file a

5  sur-reply to present such evidence.

6      On March 11, 2008, Plaintiffs filed a sur-reply and submitted Declarations

7  from Plaintiff Ambrosio Marin (Ct. Rec. 126-2, Ex. A); Javier Borges (Ct. Rec.

8  126-2, Ex. B); Plaintiff Miguel Sanchez (Ct. Rec. 126-2, Ex. C); Cirilo Marin (Ct.

9  Rec. 126-2, Ex. D); and Joyce Usher (Ct. Rec. 126-2, Ex. F).  A hearing was held

10  on the motion on April 22, 2008, in Yakima, Washington.  Plaintiffs were

11  represented telephonically by Howard Foster, Matthew Galin, and Greg Lighty.

12  Defendants were represented by Scott Johnson.

13      Additionally, on February 22, 2008, Plaintiffs filed a Motion to Vacate the

14  Remainder of the Scheduling Order and on February 25, 2008, filed a Motion for

15  Protective Order.  Defendants then filed a Motion to Compel Discovery Responses

16  on April 4, 2008.

17      Finally, on June 2, 2008, Defendants filed a Motion for Summary Judgment.

18  A hearing on the motion was held on July 14, 2008, in Spokane, Washington.

19  Plaintiffs were represented telephonically by Howard Foster, Matthew Galin, and

20  Greg Lighty.  Defendants were represented in person by Bradford Axel.

21      All of these motions remain pending before the Court.

22  **DISCUSSION**

23  **1.**    **Plaintiffs' Motion for Class Certification**

24      Plaintiffs seek to certify the following class:

25  Plaintiffs and all other persons legally authorized to be employed in
   the United States who have been employed by Evans Fruit as either
26  hourly paid or piece rate paid workers from September 30, 2002

27

28

**ORDER ADDRESSING PENDING MOTIONS ~ 4**

1  through the present.[1]

2  Fed. R. Civ. P. 23 sets forth the requirements to a class action.  Fed. R. Civ.

3  P. 23(a) states:

4          One or more members of a class may sue or be sued as
        representative parties on behalf of all only if (1) the class is so
5      numerous that joinder of all members is impracticable; (2) there are
        questions of law or fact common to the class; (3) the claims or
6      defenses of the representative parties are typical of the claims or
        defenses of the class; and (4) the representative parties will fairly and
7      adequately protect the interest of the class.

8  Plaintiffs are seeking class certification under Fed. R. Civ. P. 23(b)(3).

9  Thus, in addition to finding that the prerequisites are met, the Court must also find

10 that:

11         the questions of law or fact common to the members of the class
        predominate over any questions affecting only individual members,
12     and that a class action is superior to other available methods for the
        fair and efficient adjudication of the controversy.

13 Fed. R. Civ. P. 23(b)(3).

14 In making these findings, the Court may consider the following factors:

15         (A) the interest of members of the class in individually
        controlling the prosecution or defense of separate actions;
16         (B) the extent and nature of any litigation concerning the
        controversy already commenced by or against members of the class;
17         (C) the desirability or undesirability of concentrating the
        litigation of the claims in the particular forum;
18         (D) the difficulties likely to be encountered in the management
        of the class action.

19
20 Fed. R. Civ. P. 23(b)(3)(A)-(D).

   Plaintiffs bear the burden of demonstrating that they have met each of the

21 four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).

22 *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 724 (9th Cir. 2007).

23
24 **A.    Fed. R. Civ. P. 23(a)**

25       **i.    Numerosity**

26 Although Plaintiffs have not identified with specificity the number of

27 ───────────────────────────

28       [1]Plaintiffs state that skilled workers who negotiate their pay would not be

   part of the proposed class.

   **ORDER ADDRESSING PENDING MOTIONS ~ 5**

putative class members, Defendants have not disputed this requirement.

### ii.    Commonality

Plaintiffs must show that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Commonality focuses on the relationship of common facts and legal issues among class members. *Dukes v. Wal-Mart,* 509 F.3d 1168, 1177 (9th Cir. 2007). "The existence of shared legal issues with divergent factual predicates is sufficient, as is the common core of salient facts coupled with disparate legal remedies within the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The commonality test is qualitative rather than quantitative-one significant issue common to the class may be sufficient to warrant certification." *Dukes*, 509 F.3d at 1177.

Plaintiffs identify the following common questions: (1) whether the Defendants perpetrated the Illegal Immigrant Hiring Scheme in violation of the Immigration and Naturalization Act and RICO; and (2) whether the company, through Defendants William and Tim Evans, depressed wages because of the large number of illegal workers employed there; and (3) damages.

The Court finds that Plaintiffs have met the permissive and minimal burden of establishing commonality.

### iii.    Typicality

Plaintiffs must show that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantial identical." *Hanlon*, 150 F.3d at 1020. "Typicality requires that the named plaintiffs be members of the class they represent. *Dukes*, 509 F.3d at 1184. "Typicality is not defeated because of the varied promotional opportunities at issue, or the differing qualifications of plaintiffs and class members." *Id.* at 1185 (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (9th Cir. 1982)). In fact, "some degree of individuality is to be

**ORDER ADDRESSING PENDING MOTIONS ~ 6**

1    expected in all cases, but that specificity does not necessarily defeat typicality.

2    *Dukes*, 509 F.3d at 1184.  The question the Court must determine, then, is whether

3    the injury allegedly suffered by the named Plaintiffs, and the rest of the class

4    resulted from the same allegedly illegal conduct.  *Id.*

5         Defendants argue that Plaintiffs are not typical of the class members they

6    seek to represent because under Plaintiffs' antitrust theory of damages, they fail to

7    show that they occupy the same labor market as the other class members whom

8    they seek to represent.

9         It is this requirement that is most troubling to the Court.  Intuitively, one

10   would conclude there are too many variables regarding the employment at Evan

11   Fruit so that Plaintiffs, who are year-round tractor drivers at the Sunnyside orchard,

12   would be asserting claims that would not be typical of seasonal, piece-rate fruit

13   pickers.  However, the claims are not necessarily specific to the particular job.

14   Rather, Plaintiffs are asserting that a company-wide policy, namely the Illegal

15   Hiring Scheme, affected all employees by reducing minimum wages that were

16   being paid for the particular jobs.

17        The *Dukes* case is instructive.  In that case, the Circuit held that because all

18   female employees faced the same alleged discrimination based on company-wide

19   policies, the lack of a class representative for each management category did not

20   undermine the class certification.  509 F.3d at 1184.  As the Circuit noted, it may

21   be prudent to have the class divided into sub-classes represented by a named

22   plaintiff from each of the differing job categories, but it is not necessary in order to

23   certify the class.  *Id.* (quoting *Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir.

24   1994).

25        Here, the typicality is measured by the fact that the named Plaintiffs were

26   employees of Evans Fruit, and their claim is that they were allegedly injured by the

27   Illegal Hiring Scheme by reduction in pay, which is typical of the claims that

28   would be asserted by all members of the purported class.

**ORDER ADDRESSING PENDING MOTIONS ~ 7**

1        **iv. Adequacy of Counsel**

2       Rule 23(a)(4) permits certification of a class action only if "the

3    representative parties will fairly and adequately protect the interests of the class."

4    Fed. R. Civ. P. 23(a)(4).  This factor requires: (1) that the proposed representative

5    Plaintiffs do not have conflicts of interest with the proposed class, and (2) that

6    Plaintiffs are represented by qualified and competent counsel.  *Hanlon*, 150 F.3d at

7    1020.  "[A] class representative must be part of the class and 'possess the same

8    interest and suffer the same injury' as the class members."  *Amchem Products, Inc.*

9    *v. Windsor*, 521 U.S. 591, 626 (1997) (citations omitted).

10      Defendants argue that Plaintiffs' counsel are running this case and they have

11   essentially entered into a holding pattern while they deal with other cases in other

12   jurisdictions.  Defendants suggest that the financial commitment of Plaintiffs'

13   counsel may come before the best interests of Plaintiffs' case.

14      The Court does not find that Defendants' concerns justify finding that

15   Plaintiffs' counsel would not adequately represent the interests of the class.

16   Indeed, Defendants admit that Plaintiffs' counsel has substantial experience in

17   pursuing claims of this sort.

18       **v. Conclusion**

19      Accordingly, the Court finds that the requirements of Fed. R. Civ. Fed.

20   23(a)—numerosity, commonality, and typicality—have been met.  The Court also

21   finds that Plaintiffs' counsel will fairly and adequately protect the interests of the

22   class.

23     **B. Fed. R. Civ. P. 23(b)**

24      Plaintiffs move to certify the class under Fed. R. Civ. P. 23(b)(3).  Under

25   this theory, the Court must find that "the questions of law or fact common to class

26   members predominate over any questions affecting only individual members, and

27   that a class action is superior to other available methods for fairly and efficiently

28   adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In short, in order to meet

**ORDER ADDRESSING PENDING MOTIONS ~ 8**

their burden, Plaintiffs must show both predominance and superiority of the class action over individual claims. *Amchem Prods.,* 521 U.S. at 615.

### i.    Predominance

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).

Defendants argue that antitrust cases are not always good candidates for class treatment. However, in this case, both the underlying wrongdoing and the impact from that wrongdoing is alleged on a systematic, class-wide basis.

The Court finds that common questions predominate. Also, in support of their claims, Plaintiffs are relying on specific company-wide policies and practices that allegedly give rise to liability, which is conducive to a class action. *See Dukes*, 509 F.3d at 1177.

### ii.    Superiority

Plaintiffs must show that a class action is superior to other methods available for the adjudication of the parties' dispute. Here, a class-wide litigation of the common questions will reduce litigation costs and promote greater efficiency. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). It is doubtful that any plaintiff will bring an individual claim that challenges the alleged illegal hiring scheme, absent class certification. It is also doubtful that many of the absent class members understand the American legal system. Finally, the amount that could be recovered by any particular employee would be too small to justify individual actions by individual employees.

### C.    Defendants' Arguments

In addition to those addressed above, Defendants make the following arguments against class certification: (1) determining who is an unauthorized and who is an authorized worker would require an employee-specific discovery for thousand of workers; (2) determining who was smuggled into the United States

**ORDER ADDRESSING PENDING MOTIONS ~ 9**

would require mini-trials for thousands of employees; (3) determining whether Defendants had actual knowledge would require thousands of mini-trials; (4) determining damages raises individual issues; and (5) Plaintiffs have failed to explain how they will notify the class.

### (i)    Determination of Unauthorized and Authorized Workers

Defendants argue that the determination of unauthorized and authorized workers would cause the prosecution of the class action to be unmanageable. The Court disagrees. Plaintiffs have proposed methods for determining class membership which should be sufficient. Central to identification of class members is the identification of who was authorized to be employed and who was not. This is the same proof that will be required on the merits. While it may be difficult to prove, the fact is that it can be proven, and therefore, should not be a basis for declining to certify the class.

### (ii)    Determination of Who was Smuggled into the United States

Defendants argue that Plaintiffs' motion for class certification fails to offer any method for determining whether an unauthorized EFC employee is unauthorized because he or she overstayed his or her visa. This argument goes to the merits of Plaintiffs' claims and does not affect the validity of the class certification.

### (iii)    Determination of Whether Defendants had Actual Knowledge that Employees Entered Country Illegally

Along the same lines, Defendants appear to argue that in order for Plaintiffs to succeed on their claims, they will need to show actual knowledge that an employee was unauthorized and that the employee had entered the country illegally. Again, this argument goes to the merits of Plaintiffs' claims and does not affect the validity of the class certification.

### (iv)    Determining Damages Raises Individual Issues

Defendants argue that Plaintiffs' damages theory raises fact issues that would vary by class members and would preclude class certification.

**ORDER ADDRESSING PENDING MOTIONS ~ 10**

1    The fact that individualized inquiries into damages may be necessary does

2    not necessarily mean that class certification should be denied.  7A Charles A.

3    Wright, et al., Federal Practice and Procedure § 1764 (3rd) (stating that typicality

4    may exist even though "there is a disparity in the damages claimed by the

5    representative parties and the other members of the class.").  Moreover, actions

6    under Rule 23(b)(3) are generally loosely bound together by common questions of

7    law or fact and by considerations of convenience, and damages typically are

8    individual in character and disparate in amount.  *Id.* at § 1784.

9    The Court finds that individual damages issues does not preclude class

10   certification.  Under Plaintiffs' theory, the common conspiracy has a common

11   impact. Although the measure of the impact may be different, class certification is

12   not precluded.

13   Defendants also argue that Plaintiffs have not explained how they will show

14   that Evans Fruit Co. had market power to control wages.  Again, this argument

15   goes to the merits of Plaintiffs' claims and not to whether class certification is

16   appropriate.

17          **(v)    Plaintiffs Have Failed to Explain How They Will Notify the Class**

18   Defendants assert that Plaintiffs have not explained how they will notify the

19   class.  Defendants do not argue that this failure precludes certification of the class

20   action.  Although the Court agrees that notice may be  difficult to provide, within a

21   reasonable time, Plaintiffs can propose a plan for notification, Defendants can file

22   their objections, and the Court can rule on the proposed plan.

23   **D.    Conclusion**

24   Plaintiffs have met their burden of persuasion that class certification is

25   appropriate.  Plaintiffs' counsel are appointed class counsel pursuant to Fed. R.

26   Civ. P. 23(g).  Within **10 days** from the date of this order, Plaintiffs shall file their

27   plan for notifying class members of the pendency of this action and the right to

28   opt-out of the Rule 23(b)(3) Class.  *See* Fed. R. Civ. P. 23(c)(2)(B).

**ORDER ADDRESSING PENDING MOTIONS ~ 11**

**2.      Defendant's Motion to Exclude All or Portions of Declarations**

In response to the Court's invitation to file a sur-reply to Defendants' Motion for Summary Judgment, Plaintiffs filed Declarations from both name-Plaintiffs, as well as Declarations from individuals who were not previously disclosed to Defendants.  Defendants moved the Court to strike the Declarations due to the untimely disclosure.  Defendants also asserted that the Declarations should be stricken because they contradicted earlier deposition testimony, contained inadmissible hearsay, and lack of foundation.  Defendants also argue that Joyce Usher's Declaration is irrelevant.

Fed. R. Civ. P. 37(c)(1) states:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(3)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 26(a)(1)(A)(i) states:

A party must, without awaiting a discovery request, provide to the other party the name, and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses.

Plaintiffs are not disputing that they had not previously disclosed Javier Borges, Cirilo Marin, or Joyce Usher as individuals with discoverable information and with whom Plaintiffs would be relying upon to prove their case.  Plaintiffs maintain, however, that they did not violate Fed. R. Civ. P. 26 because they disclosed these witnesses within days of determining that they would use their testimony.  The Court disagrees with Plaintiffs' interpretation of what is required under the Rules of Civil Procedure and the Court also questions Plaintiffs' explanations as to how it came to pass that Plaintiffs determined they would use these individuals' statements.

At the hearing, Plaintiffs' counsel indicated to the Court that Plaintiffs had evidence that would demonstrate that co-conspirators or co-Defendants had actual knowledge that an individual was unauthorized and had entered the country

**ORDER ADDRESSING PENDING MOTIONS ~ 12**

illegally.  At the time of the hearing then, Plaintiffs' counsel knew that these individuals had discoverable information.  Presumably, Plaintiffs counsel had contacted these individuals at some point prior to this hearing, yet never disclosed these individuals to Plaintiff.  Since Plaintiffs are relying on these persons to prove the elements of their claims, it is inconceivable that these individuals would not need to be disclosed under Fed. R. Civ. P. 26.   It is not unfair or unreasonable to expect Plaintiffs to prepare to prove the essential elements of the claim at trial, and to identify the witnesses they needed for that purpose on a timely basis, regardless of whether Defendants challenged the sufficiency of the proof of the elements in motions for summary judgment.  *See Wong v. Regents of the Univ. Of Calif.*, 410 F.3d 1052 (9th Cir. 2005).

Alternatively, if it is true, as Plaintiffs explained in their briefing, that Plaintiffs did not identify that these individuals had discoverable information until after the February 26, 2008, hearing, then Plaintiffs were not being forthright with the Court.  It is significant to note that Plaintiffs did not ask for more time to discover evidence to oppose Defendant's Motion for Summary Judgment.  Rather, the Plaintiffs represented that they had already developed such information but did not file it because they did not think it necessary.

Either way, it is well within the Court's discretion to grant Defendants' Motion to Strike based on violations of Fed. R. Civ. P. 26.  The Court finds that Defendants were prejudiced by the untimely notification of percipient witnesses.  Defendants were not able to depose these witnesses to determine the factual basis for their statements.  Also, trial is currently set for November 17, 2008, and the discovery cutoff is July 11, 2008.  Notification of these witnesses just a few months prior to discovery cutoff prejudices Defendants as they prepare for trial.

Therefore, the Court will not consider the Declarations of Javier Borges, Cirilio Marin and Joyce Usher in opposition to Defendant William Evans' Motion for Summary Judgment.  The Court addresses the inadequacy of the Declarations

**ORDER ADDRESSING PENDING MOTIONS ~ 13**

1    for the sake of the parties, but will not consider them because they are untimely.

2        The Court finds that many of the statements contained in the Declarations

3    must be excluded for lack of foundation.  Plaintiffs argue that the fact that they

4    worked at the EFC Sunnyside, Washington, orchard for many years provides the

5    necessary foundation for their statements.  The Court disagrees.

6        "Conclusory affidavits that do not affirmatively show personal knowledge of

7    specific facts are insufficient" to support a summary judgment motion.  *Shakur v.*

8    *Schriro*, 514 F.3d 878, 890 (9th Cir. 2008).  Courts have recognized that

9    declarations oftentimes will be self-serving, "and properly so, because otherwise

10   there would be no point in a party submitting them."  *S.E.C. v. Phan*, 500 F.3d 895,

11   909 (9th Cir. 2007) (citations omitted).  As a result, in most cases, the fact that an

12   affidavit is self-serving "bears on its credibility, not on its cognizability for

13   purposes of establishing a genuine issue of material fact."  *Id.*  "Only in certain

14   instances–such as when a declaration 'states only conclusions, and not such facts

15   as would be admissible in evidence'–can a court disregard a self-serving

16   declaration for purposes of summary judgment."  *Id.*

17       In this case, there are many self-serving statements that are not based on

18   personal knowledge, but are based on information and belief.  Because of this,

19   it is almost impossible to evaluate any potential hearsay implications of the

20   statements without the required personal knowledge foundation.  *See Norita v.*

21   *Northern Marina Islands*, 331 F.3d 690, 697-98 (9th Cir. 2003).  As such, these are

22   not admissible and the Court will not consider them in ruling on the Motion for

23   Summary Judgment.  *Schroeder v. McDonald*, 55 F.3d 454, 459 (9th Cir. 1995);

24   *Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d

25   1525, 1529 (9th Cir. 1991)(rejecting an affidavit because it was "not based on

26   personal knowledge, but on information and belief").

27       The following statements made by Plaintiff Ambrosia Marin appear to be

28   based on information and belief and therefore are lacking in foundation and are

**ORDER ADDRESSING PENDING MOTIONS ~ 14**

inadmissible:

1. Juan Marin hires people he knows or who are relatives.

2. Juan Marin personally knows the majority of the workers he hires because they are from his hometown or from the same area in Mexico.

3. Everyone who is hired at the Sunnyside location first meets and talks with Juan Marin and he fills out the paperwork.

4. Ninety percent of the workers hired by Juan Marin have absolutely no documents upon arriving at EFC.

The following statements made by Javier Borges appear to be based on information and belief and therefore are lacking in foundation and are inadmissible:

1. Juan Marin is responsible for all the hiring decisions.

2. Juan Marin personally knows the majority of the workers he hires because they are from his hometown or from the same area in Mexico.

3. Juan Marin tells his workers to ignore the no-match letters while continuing to employ the illegal workers.

4. Filogonio is Juan Marin's brother-in-law and he is an illegal alien who works at EFC.

The following statements made by Cirilo Marin appear to be based on information and belief and therefore are lacking in foundation and are inadmissible:

1. Juan Marin is responsible for all the hiring decisions.

2. Juan Marin personally knows the majority of the workers he hires because they are from his hometown and from the same area in Mexico.

3. Ninety percent of the workers hired by Juan Marin have absolutely no documents upon arriving at EFC.

Additionally, the Declarations of Plaintiffs Ambrosio Marin and Miguel Sanchez contradict their earlier deposition testimony.

**ORDER ADDRESSING PENDING MOTIONS ~ 15**

1    In his Declaration, Ambrosio Marin stated that the workers Juan Marin hires

2    typically purchased a fake social security card and a fake alien registration card.  In

3    his Deposition, Plaintiff Marin stated that he had personally seen two permanent

4    resident cards that were fake and three social security cards that were fake and he

5    had not seen any of these fake documents presented to Juan Marin.  In fact,

6    Plaintiff Marin stated that he believed that no one would come right out and tell

7    Juan Marin that he or she was illegal.

8    In his Declaration, Miguel Sanchez stated that while he was working full-

9    time, he often heard workers talking with Juan Marin about using a coyote to cross

10   the U.S. border.  These people would talk to Juan Marin about having to pay off

11   the coyote, how difficult it was to cross the border, and about when they finally

12   arrived in the United States.  In his Deposition, Plaintiff Sanchez stated that he

13   heard someone tell Juan Marin on one occasion that he or she was an illegal alien.

14   He stated that there was only one incident.

15   The Court would disregard these statements as set forth in the Declaration

16   that contradicts Plaintiffs' prior deposition testimony.  *See Kennedy v. Allied Mut.*

17   *Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991).  The Court has reviewed the deposition

18   testimony and concludes that Plaintiffs were not confused at the deposition, nor do

19   the declarations explain those aspects of the deposition testimony.

20   The Court finds that many of the statements in the Declarations contain

21   inadmissible hearsay.  Notably, the statement by Joyce Usher in which she stated

22   that a warehouse worker told her that Bill Evans personally went to the warehouse

23   and told workers that the INS was coming is admitted for the truth of the matter

24   asserted, that is, to prove that Bill Evans told workers that INS was coming.  As

25   such, it is inadmissible as a hearsay statement.

26

27

28

**ORDER ADDRESSING PENDING MOTIONS ~ 16**

**3.    Defendant's Motion for Summary Judgment**

   **A.    Standard of Review**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 325; *Anderson*, 477 U.S. at 248.

   To survive a motion for summary judgment, plaintiffs must produce sufficient evidence to establish the existence of every essential element of their case on which they will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323. When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000).

   **B.    Plaintiffs' Claims Against William Evans**

In their Amended Complaint, Plaintiffs allege that Defendant William Evans participated in the Illegal Immigrant Hiring Scheme by approving certain hiring criteria and setting and approving wage levels that are too low to attract sufficient numbers of legal workers to staff EFC (Ct. Rec. 68, ¶¶ 16, 18). Plaintiffs also

**ORDER ADDRESSING PENDING MOTIONS ~ 17**

1    allege that Defendant Williams Evans directed Juan Marin to facilitate the Illegal

2    Immigrant Hiring Scheme (Ct. Rec. 68, ¶ 21).  Plaintiffs allege that Defendant

3    William Evans violated 18 U.S.C. § 1962(d) by participating in a conspiracy to

4    perpetrate the Scheme by participating in the affairs of EFC through a pattern of

5    racketeering activity (Ct. Rec. 2).

6         **C.**     **Proof of Elements of Predicate Offenses**

7         Plaintiffs are bringing their claims under RICO, and specifically under 18

8    U.S.C. § 1962(d).  To prove a violation of 18 U.S.C. § 1962(d), Plaintiffs must

9    show (1) a conspiracy (2) with the purpose of violating 18 U.S.C. § 1962(c).  To

10   prove a violation of 18 U.S.C. § 1962(c), Plaintiffs must show that a conspirator

11   conducted or participated in the activities of an enterprise through a pattern of

12   racketeering activity.  *Reves v. Ernst & Young,* 507 U.S. 170, 177 (1993). Plaintiffs

13   must also prove the requisite injury to "business or property" and that the injury

14   was "by reasons of" the predicate RICO violation.  *Canyon County v. Syngenta*

15   *Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008).

16        In *Salinas v. United States*, the Supreme Court held that in order to be

17   convicted under the RICO conspiracy statute, it is not necessary for the defendant

18   to commit or agree to commit the two predicate acts requisite for a substantive

19   RICO offense under § 1962(c).  522 U.S. 52, 65 (1997).  Rather, as long as the

20   defendant knew about and agreed to facilitate the scheme, this is sufficient to

21   support a conviction under § 1962(d).  *Id.*  Specifically, the Supreme Court held:

22        A conspirator must intend to further an endeavor which, if
     completed, would satisfy all of the elements of a substantive criminal
23   offense, but it suffices that he adopt the goal of furthering or
     facilitating the criminal endeavor. He may do so in any number of
24   ways short of agreeing to undertake all of the acts necessary for the
     crime's completion. One can be a conspirator by agreeing to facilitate
25   only some of the acts leading to the substantive offense. It is
     elementary that a conspiracy may exist and be punished whether or
26   not the substantive crime ensues, for the conspiracy is a distinct evil,
     dangerous to the public, and so punishable in itself.

27   *Id.*; *see also United States v. Frega*, 179 F.3d 793, 818 (9th Cir. 1999) ("[I]t is clear

28   that RICO conspiracy is 'more comprehensive' than a general conspiracy.  Unlike

**ORDER ADDRESSING PENDING MOTIONS ~ 18**

most ordinary conspirators, RICO conspirators do not need to commit, or agree to commit, overt acts; they just need to agree on the overall objective of the conspiracy with knowledge that others are similarly agreeing.").

In *Beck v. Prupis*, the Supreme Court held that "a person may not bring suit under § 1964(a) predicated on injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute.  529 U.S. 494, 507 (2000).  In that case, the plaintiff was terminated, allegedly in furtherance of a RICO conspiracy, but the termination was not independently wrongful under any provision of RICO and the injury caused by the termination was not sufficient to give rise to a cause of action under RICO.  *Id.*

To show a pattern of racketeering, Plaintiffs will have to show at least two acts of racketeering activity, one of which occurred after the effective date of the RICO chapter and the last of which occurred within ten years after the commission of the prior act of racketeering activity.  18 U.S.C. § 1961(5).  The racketeering activity that is alleged by Plaintiffs are violations of 8 U.S.C. § 1324(a)(3)(A)[2] and § 1324(a)(1)(A)(iii)[3].  Thus, to establish a RICO claim, Plaintiffs must provide

_____

[2]Employment of aliens:  Any person, who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens . . . shall be fined under Title 18, or imprisoned for not more than 5 years, or both.  8 U.S.C. § 1324(a)(3)(A).  Aliens are defined as an alien who–(i) is an unauthorized alien and (ii) had been illegally brought into the United States.  § 1324(a)(3)(B).

[3]Harboring of Aliens:  Any person who— knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shied from detection, such alien in any place, including any building or any means of transportation.  8 U.S.C. § 1324(a)(1)(iii).  Aliens are defined as an alien who–(i) is an unauthorized alien and (ii) had been illegally

**ORDER ADDRESSING PENDING MOTIONS ~ 19**

1    sufficient probative evidence of the material elements of these predicate offenses.

2         Under section 1324(a)(3)(A), Plaintiffs must present evidence that during a

3    twelve-month period, Defendants conspired to knowingly hire at least ten

4    individuals with actual knowledge those individuals were unauthorized to work in

5    the United States and were brought into the country for purposes of illegal

6    employment.  *See Trollinger v. Tyson Foods, Inc.*, 543 Supp.2d 842, 847 (E.D.

7    Tenn. 2008).  Under section 1324(a)(1)(A)(iii), Plaintiffs must present admissible

8    evidence to prove that Defendants conspired to commit actions to substantially

9    facilitate an alien remaining in this country illegally and did so with knowledge or

10   a reckless disregard of the fact that the alien illegally entered or remained in the

11   United States.  *Id.* at 854.

12        Plaintiffs argue that Defendant Evans' role in the conspiracy was to

13   implement or approve polices that allowed EFC to knowingly hire and harbor

14   illegal aliens.  Plaintiffs have not identified any policies that allowed EFC to

15   knowingly hire and harbor illegal aliens.  Thus, in order to find for the Plaintiff, a

16   reasonable jury would have to rely on inferences from the evidence in the record.

17   Plaintiffs' arguments rest on their allegations that because there are illegal aliens

18   hired at EFC, there must be policies in place that permit that to happen.  Also,

19   Plaintiffs argue that Defendant Evans facilitated a policy of willful blindness

20   through the creation and implementation of EFC policies regarding the hiring and

21   housing of EFC employees that enabled others to commit the necessary predicate

22   hiring and harboring acts.  In contrast, Defendants have presented ample evidence

23   of policies in place at EFC that are designed to prevent the hiring of illegal aliens.

24        Plaintiffs rely in part on a list of ninety-one workers compiled by Plaintiff

25   Marin in which he identifies as illegal aliens that were employed by EFC (Ct. Rec.

26   126-2, Ex. E).  Plaintiff Marin does not set forth the basis of his knowledge and as

27   such, this list is entirely lacking in foundation, is inadmissible, and would not

28

brought into the United States in violation of § 1324(a)(3)(B).

**ORDER ADDRESSING PENDING MOTIONS ~ 20**

support an inference of a company-wide policy of willful blindness or the hiring or harboring of illegal aliens. Additionally, this list fails to provide the dates that these ninety-one workers were employed so it would not establish the temporal element of the offense.

Under the RICO claim, it is not enough for the jury to infer that there were company-wide polices that would permit the hiring and harboring of illegal aliens. The jury would have to infer that the company-wide policies permitted the hiring and harboring of at least 10 individuals within a 12-month period who had been illegally brought into the United States. Plaintiff Marin stated that he had personally seen two permanent resident cards that were fake and three social security cards that were fake. Plaintiff Sanchez stated that there was only one incident in which he heard an employee tell Juan Marin that he or she was an illegal alien. There simply is not enough evidence for a jury to conclude that EFC has in place a company-wide policy that would permit the hiring and harboring of at least 10 illegal aliens in a 12-month period.

Plaintiffs also argue that co-conspirators or co-Defendants committed a pattern of racketeering activity. Yet, Plaintiffs have not presented admissible evidence that would suggest that any of the co-conspirators or co-Defendants committed a pattern of racketeering activity. To do so, Plaintiffs would have to show that a co-conspirator or co-Defendant knowingly hired at least ten individuals with actual knowledge that the individual was unauthorized and had been brought into the United States within a 12-month period.

Plaintiff Ambrosia Marin stated that he was hired by Juan Marin in 1986, that Juan Marin knew that he was illegal and entered the United States with a coyote. He also stated that Juan Marin had sent someone to pick him up in California. On the other hand, Ambrosia Marin stated in his deposition that he had not seen any fake documents presented to Juan Marin. Plaintiff Marin also stated that he believed that no one would come right out and tell Juan Marin that he or

**ORDER ADDRESSING PENDING MOTIONS ~ 21**

1   she was illegal.[4]  Plaintiff Marin has personally observed Alberto Salivdar selling

2   fake documents since 2002.[5]  He has personally observed Juan Marin telling his

3   workers to ignore the SSN letters while continuing to employ illegal workers.

4        Plaintiff Miguel Sanchez stated that he heard workers talking with Juan

5   Marin about using a coyote and also heard Juan Marin talking with workers about

6   mutual friends (presumably from his hometown in Mexico).  Plaintiff Sanchez also

7   stated that Juan Marin assigns multiple workers the same social security number.

8   Specifically, he stated that when he was sick on three occasions, another worker

9   used his social security number without his permission.  Consequently, he had to

10  give a portion of his paycheck to that employee.  The first time this happened Jesus

11  Garcia came to his house and Defendants William Evans, Tim Evans, and Juan

12  Marin were waiting outside.  The same thing happened to a friend of his.  Plaintiff

13  Miguel Sanchez stated that he believes that Juan Marin prefers hiring illegal

14  workers rather than legal workers, because, according to Marin, illegal workers

15  will not request unemployment benefits.

16       The inferences that would have to be made from these statements has to

17  support a finding that a co-conspirator or co-Defendant knowingly hired at least

18  ten individuals with actual knowledge that the individual was unauthorized and had

19  been brought into the United States within a 12-month period.   The Court finds

20  that these statements do not provide sufficient evidence for a reasonable jury to

21  conclude that Defendant William Evans or a co-conspirator violated 8 U.S.C. §

22

23       [4]In his Declaration, Ambrosia Marin stated that he personally heard

24  conversations where people would tell Juan Marin that they had used a coyote and

25  would update him about other workers en route to EFC from Mexico.  However,

26  this contradicts his statement that he believed no one would tell Juan Marin that he

27  or she was illegal.

28       [5]The Court notes that Plaintiff Marin began working at EFC for the second

time in 2004.

**ORDER ADDRESSING PENDING MOTIONS ~ 22**

1324(a)(3)(A). Without names and dates, it would be impossible for a jury to find by a preponderance of the evidence that anyone associated with EFC committed a predicate act.

One would expect Plaintiffs to present to the Court in an admissible manner the names of the illegal employees, when they were hired, by whom they were hired, and when and how they had been brought into the country. Even at this point in the proceedings, Plaintiffs have not done so. Rather, Plaintiffs provided Declarations in which no names were provided and no time frames were provided. There is nothing in the Declarations, even if the Court were to admit the entire Declarations, for the jury to find that any co-conspirator knowingly hired for employment at least ten individuals with actual knowledge that the individuals were unauthorized aliens who were illegally brought into the United States.

In their Complaint, Plaintiffs allege that EFC provides housing to illegal aliens, which, if true, establishes the harboring offense. In addition, Plaintiffs alleged that Defendant Evans fails to implement any meaningful oversight of the housing process and thereby facilitates EFC's RICO harboring violations. Finally, in their sur-reply, Plaintiffs allege that Defendant William Evans facilitated the re-hiring of illegal workers after the INS audit. The proof that Plaintiffs provide for the tip-off is testimony from Joyce Usher. She stated that she was directed by Bill Evans and his lawyer to process new I-9 Forms and W-4 Forms for the same workers who did not show up for work during the INS audit. Defendants counter that the employees who missed work on this day were terminated within a matter of months and were not rehired by EFC. As discussed above, the Court strikes the declaration of Joyce Usher because of its untimely disclosure.

Consequently, the only remaining evidence that Plaintiffs have provided to the Court with respect to the harboring claim is the following: (1) Defendants' declaration that he provides housing that he and his wife own to EFC employees and their families; (2) Defendant facilitates EFC's policy of ignoring the factors

**ORDER ADDRESSING PENDING MOTIONS ~ 23**

that indicate that the employees housed are illegal aliens; and (3) Plaintiff Marin identified several illegal aliens housed by EFC.

In support of their motion, Defendants provided a declaration from Shirley Archer, an EFC employee, in which she states that she is not aware of any illegal aliens on the list of residents that she compiled, and was unable to find any government notification that these residents were illegal.

Plaintiff Marin's statement in which he identified several illegal aliens on Archer's list lack foundation. There is no basis for his knowledge. For the same reasons as discussed above, the statements lack foundation and cannot be used to challenge a motion for summary judgment.

The Court finds that Plaintiffs have not established that there are any genuine issues of material fact, nor have they provided sufficient evidence for a reasonable jury to find that William Evans harbored illegal aliens.

### C.    Conclusion

Plaintiffs have not met their burden of providing sufficient evidence for a reasonable jury to find that William Evans committed or conspired to commit a predicate act. There is no direct evidence of an agreement or conspiracy to commit the predicate offenses. Thus, in order for Plaintiffs to prevail, they must demonstrate that there is sufficient evidence for the jury to infer that there was an agreement or conspiracy to commit the predicate offenses. Plaintiffs have failed to do so. As such, summary judgment in favor of Defendant William Evans is appropriate.

4.    **Plaintiffs' Motions to Vacate Remainder of Scheduling Order; Motion for Protective Order**

On February 22, 2008, Plaintiffs filed a motion to vacate the Scheduling Order. Specifically, Plaintiffs asked that the Scheduling Order be amended to extend the deadline for expert witness discovery due to the recent positions taken by Defendants in the response to the class certification and that it would be inefficient to conduct lengthy and expensive expert discovery prior to ruling on

**ORDER ADDRESSING PENDING MOTIONS ~ 24**

class certification and summary judgment.  Additionally, Plaintiffs are seeking a protective order to stay all merits discovery until after a ruling on class certification and partial summary judgment.

In the absence of a decision by the Court to close all discovery in accordance with the original schedule, discovery would be effectively closed at this point. Closing discovery at this point would not serve either party.  Consequently, new deadlines must be established.  The Court will extend the discovery cutoff deadline an additional 90 days to October 24, 2008.  Plaintiffs shall provide their expert witness discovery within 45 days from the date of this order.  In order to accommodate the extension of the discovery deadline, the November 18, 2008, trial date is stricken.  A new trial date is set for January 26, 2009.

Additionally, the Court grants Defendant Tim Evans leave to conduct the depositions of Plaintiffs Marin and Sanchez.

**5.    Defendant Tim Evan's Motion to Compel Discovery**

On February 20, 2008, Defendant Tim Evans served one interrogatory and one document request.  Plaintiffs have refused to respond to the discovery request pending the Court's ruling on their Motion to Vacate Remainder of Scheduling Order and Motion for Protective Order.  The Court finds that good cause exists to grant the motion.  Within 14 days from the date of this order, Plaintiffs shall respond to Defendant's outstanding discovery requests.

**6.    Pending Motion for Summary Judgment**

Based on the extension of the expert disclosure and discovery deadline previously granted by the Court, the Court denies Defendants' Motion for Summary Judgement based on the lack of expert testimony with leave to renew after the expert disclosure deadline passes.

**ORDER ADDRESSING PENDING MOTIONS ~ 25**

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiffs' Motion to Certify Class (Ct. Rec. 74) is **GRANTED**.  Within **10 days** from the date of this Order, Plaintiffs shall file their plan for notifying class members of the pendency of this action and the right to opt-out of the Rule 23(b)(3) Class.

2.    Defendant William Evans' Motion for Summary Judgment (Ct. Rec. 80) is **GRANTED**.

3.    Plaintiffs' Motion to Vacate Remainder of Scheduling Order (Ct. Rec. 112) is **GRANTED**.  Within **45 days** from the date of this Order, Plaintiffs shall provide their expert witness discovery.  The discovery deadline is set for October 24, 2008.  The November 18, 2008, trial is **stricken.**  A new jury trial is set for **January 26, 2009**, at **9:00 a.m.**, in Yakima, Washington.

5.    Plaintiffs' Motion for Protective Order (Ct. Rec. 116) is **DENIED**, as moot.

6.    Defendants' Motion to Exclude All Portions of Declarations (Ct. Rec. 130) is **GRANTED**.

7.    Defendant Tim Evans' Motion to Compel Discovery Responses (Ct. Rec. 142) is **GRANTED**.  Within **14 days** from the date of this order, Plaintiffs shall respond to Defendant Tim Evans' outstanding discovery requests.

8.    Defendants' Motion for Leave to File Over-Length Brief (Ct. Rec. 96) is **GRANTED**.

9.    Defendants' Motion for Leave to File Over-Length Brief (Ct. Rec. 101) is **GRANTED**.

10.    Plaintiffs' Motion for Leave to File a Reply Brief in Excess of Ten Pages (Ct. Rec. 107) is **GRANTED**.

11.    Plaintiffs' Motion for Leave to File a Brief in Excess of Ten Pages (Ct. Rec. 139) is **GRANTED**.

**ORDER ADDRESSING PENDING MOTIONS ~ 26**

1        12.   Defendants' Motion for Summary Judgment (Ct. Rec. 155) is

2    **DENIED**, with leave to renew.

3        **IT IS SO ORDERED**.  The District Court Executive is directed to enter this

4    Order and forward copies to counsel.

5        DATED this 23rd day of July, 2008.

6                  *s/ Robert H. Whaley*

7                 ROBERT H. WHALEY
            Chief United States District Judge

8

9

10

11    Q:\CIVIL\2006\Marin\sjorder.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER ADDRESSING PENDING MOTIONS ~ 27**